UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GS HOLISTIC, LLC,

        Plaintiff,

v.                                             Case No. 8:24-cv-01945-KKM-SPF

FUMOO LLC d/b/a FUMOO SMOKE
SHOP AND MEHDI GHOUNIM,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

In this trademark infringement case, Plaintiff GS Holistic, LLC's Motion for Entry of Default Final Judgment as to Defendant Mehdi Ghounim (Doc. 31) is before the Court. Mehdi Ghounim has not responded to the motion, and the deadline has passed. The Court recommends the Motion be granted.

### I.    BACKGROUND

Plaintiff GS Holistic – a Delaware limited liability company with its principal place of business in Los Angeles – markets and sells gravity infuser waterpipes throughout the United States under the brand name Stündenglass (Doc. 1 at ¶¶ 4, 7). It owns three federally registered trademarks for its Stündenglass waterpipes: U.S. Trademark Registration No. 6,633,884 ("the '884 mark"), U.S. Trademark Registration No. 6,174,292 ("the '292 mark"), and U.S. Trademark Registration No. 6,174,291 ("the '291 mark") (collectively, "the Stündenglass Marks") (*Id.* at ¶¶ 8, 10). Stündenglass-branded products are manufactured using "superior materials" and are widely recognized for their "high-quality and innovative designs" (*Id.* at ¶¶ 7, 13, 15). GS Holistic has authorized approximately 3,000 stores in the

United States to sell Stündenglass products, including its gravity infuser waterpipes, which retail for at least $599.95 (*Id*. at ¶¶ 19-20).

Defendant Ghounim owns and manages Fumoo Smoke Shop, a retail shop on Fletcher Avenue in Tampa that sells water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and smoking-related devices (*Id*. at ¶¶ 5, 26). Plaintiff originally sued both Fumoo and Ghounim but voluntarily dismissed Fumoo without prejudice under Rule 41(a)(1)(A)(i) in September 2025 (*see* Docs. 27, 29). According to records available through the Florida Division of Corporations, Ghounim listed an Orlando address for himself when he formed the company in 2021.[1]

GS Holistic explains that "the current U.S. marketplace is saturated with counterfeit Stündenglass products," compelling GS Holistic "to scrupulously enforce its rights in order to protect the Stündenglass Marks against infringement." (Doc. 1 at ¶ 25). As part of these efforts, GS Holistic dispatched a private investigator to Fumoo's retail location on January 25, 2023 (*Id*. at ¶¶ 25, 33). The investigator discovered that Fumoo—Ghounim at the helm—was selling six gravity infuser waterpipes bearing the Stündenglass Marks without GS Holistic's permission (*Id*. at ¶ 33). The investigator purchased a waterpipe that bore all three Stündenglass Marks for $376.25 and, upon inspection, determined the waterpipe was counterfeit (*Id*.).

This case followed. GS Holistic sues Ghounim for trademark counterfeiting and infringement under 15 U.S.C. § 1114, and false designation of origin under 15 U.S.C. §

---

[1] This information is available at www.sunbiz.org, a verified website of the State of Florida Division of Corporations, a public agency. The Court may take judicial notice of "a fact that is not subject to reasonable dispute because it [ ] … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

1125(a) (Doc. 1). Ghounim did not appear in the case or respond to Plaintiff's Complaint. GS Holistic moved for entry of a clerk's default under Rule 55(a), which the Clerk of Court entered (Docs. 15-17). Plaintiff now moves for a default judgment under Rule 55(b), seeking $150,000 in statutory damages, litigation costs, and an injunction (Doc. 31).

## II.   STANDARD OF REVIEW

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once this has occurred, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A court may enter a default judgment against a party who has failed to respond to a complaint if the complaint provides a sufficient basis for the judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Before entering a default judgment, the district court must ensure that the well-pleaded allegations in the complaint, taken as true by virtue of default, actually state a substantive cause of action and that there is a sufficient basis in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted). Courts assess pleadings in connection with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245 (citation omitted). A court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

3

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In addition to the pleadings, the court may also consider evidence supporting the motion for default judgment, including testimony and affidavits. *See EEOC v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-cv-61389, 2009 WL 5068532, at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" for default judgment). At all times, the decision to enter a default judgment remains within the district court's discretion. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" outlined in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation omitted). Damages, however, are not admitted by default. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). Rather, the plaintiff bears the burden of demonstrating the damages it contends should be awarded, with the court determining the amount and character of damages to be awarded. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008).

Though the court may hold an evidentiary hearing to determine an appropriate amount of damages, it is not required to do so, especially where the essential evidence is of record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); Fed. R. Civ. P. 55(b)(2). A court "may award statutory damages 'without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed.'" *Rocca v. CSX Cloud, LLC*, No. 8:21-cv-2547-CEH-CPT, 2022 WL 4244800 (M.D. Fla. Sept. 15, 2022) (quoting *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1

4

(S.D. Fla. Oct. 18, 2007)).  A court must assure that a legitimate basis exists for any damage award it enters.  *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

### III.   DISCUSSION

#### A.   Subject Matter and Personal Jurisdiction

The court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because GS Holistic sues under the Lanham Act, a federal statute.  The next issue is whether the Court has personal jurisdiction over Ghounim.  Ghounim resides in Florida and regularly conducts business in the state (*see* Doc. 1 at ¶ 6; www.sunbiz.org), but the Court still must verify that Plaintiff effectively served him under Rule 4.  Without effective service there is no jurisdiction and no obligation to answer or "otherwise defend."  *See Kelly v. Florida*, 233 F. App'x 883, 885 (11th Cir. 2007); *Rajotte v. Fabco Metal Products, LLC*, No. 6:12-CV-372-ORL-28, 2012 WL 6765731 (M.D. Fla. Dec. 13, 2012), *report and recommendation adopted*, 2013 WL 57722 (M.D. Fla. Jan. 4, 2013) (denying motion for default judgment without prejudice due to improper service).  A federal court lacks personal jurisdiction over a defendant if service of process is insufficient.  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *see also In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment.").

Here, GS Holistic filed a Return of Service for Ghounim (Doc. 14).  Ghounim's address, according to the paperwork he filed with the Division of Corporations, was an apartment in Orlando, but when the process server attempted to serve Ghounim there, the man who answered the door said he did not live there (*Id.*).  The process server located a different address for Ghounim and his family (an apartment in Winter Garden, Florida) and

attested to serving him there via his wife Nadia on November 6, 2024 (*Id.*). Nadia told the process server that she and Ghounim reside there together (*Id.*). Under Rule 4(e)(2)(B) (regarding service on individuals) and Rule 4(e)(1) (permitting a plaintiff to serve an individual in accordance with state law), GS Holistic effectively served Ghounim. *See* Fed. R. Civ. P. 4(e)(2)(B) (an individual may be served by leaving a copy of summons and complaint at the individual's swelling or usual place of abode with someone of suitable age and discretion who resides there); *and* Fla. Stat. § 48.031(1)(a) (an individual may be served by delivering a copy of the complaint, petition, or other initial pleading or paper to the person or by leaving copies at his or her usual place of abode with any person residing there who is at least 15 years old, after informing the person of their contents). Despite being served on November 6, 2024, Ghounim failed to respond to the Complaint. A clerk's default was properly entered against Ghounim (Doc. 18).

    **B.**    **Liability**

In Count I, GS Holistic avers that Ghounim willfully infringed on its trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Doc. 1 at ¶¶ 55-63). To prevail on its trademark infringement claim, GS Holistic must establish: (1) that GS Holistic possesses a valid mark, (2) that Ghounim used the mark, (3) that Ghounim's use of the mark occurred "in commerce," (4) that Ghounim used the mark "in connection with the sale . . . or advertising of any goods," and (5) that Ghounim used the mark in a manner likely to confuse consumers. 15 U.S.C. § 1114(1)(a); *see N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

In Count II, GS Holistic alleges that Ghounim's unauthorized use in commerce of the Stündenglass Marks also constituted the use of a false designation of origin and a misleading

6

description and representation of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Lanham Act imposes civil liability on

> [a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fat, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B). The Eleventh Circuit has referred to 15 U.S.C. § 1125(a) as a "federal cause of action for unfair competition." *Savannah Coll. of Art & Design, Inc. v. Sportwear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017).

Under the Lanham Act, individual owners or officers are personally liable for a company's trademark infringement if they direct, control, ratify, participate in, or are the moving force behind the infringing activity. *ADT LLC v. Alarm Prot. Tech Fla., LLC*, 646 F. App'x 781, 787-88 (11th Cir. 2016) (citing *Babbitt Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)) (quotation omitted). Additionally, although 15 U.S.C. § 1114(1)(a) guards against "infringement" and 15 U.S.C. § 1125(a) protects against "false designation of origin," the Eleventh Circuit has recognized that "an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n. 14 (11th Cir. 1989); *see SCAD*, 872 F.3d at 1261 ("We, like other circuits, often blur the lines between § 1114 claims and § 1125 claims because recovery under both generally turns on the confusion analysis"); *Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010) (stating that the district court's error in analyzing a trademark case under § 1114 rather than § 1125 was irrelevant "because the district court based its grant of summary judgment on the likelihood-of-confusion prong").

To obtain a default judgment on Plaintiff's statutory claims, Plaintiff must establish: (1) valid ownership of the mark; and (2) Ghounim's use of the mark in commerce creates a likelihood of confusion among consumers as to the origin of the goods. *See Alliance Metals, Inc. of Atl. v. Hinely Indus., Inc.*, 222 F.3d 895, 906 (11th Cir. 2000); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (describing the requirements for a § 1125 claim) (citation omitted); *Dieter v. B & H Indus. of Southwest Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989) (same for § 1114 claim). As noted, by Ghounim's default, all well-pleaded facts against him are deemed admitted.

GS Holistic has shown that it possesses valid marks. It alleges it owns the Stündenglass Marks (Doc. 1 at ¶ 10), and it attaches registration certificates for each mark from the United States Patent and Trademark Office to its Complaint (Doc. 1-4). Plaintiff has satisfied the first element of its claims.

GS Holistic has also made a plausible showing that Ghounim directed Fumoo's unauthorized use of the Stündenglass Marks in commerce such that consumers were likely to confuse the two. The Eleventh Circuit considers these seven factors in assessing likelihood of confusion: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 n.22 (11th Cir. 2001). "Where the defendants have sold counterfeit products and/or packaging intended to look exactly like genuine products and packaging, likelihood of consumer confusion is presumed." *GS Holistic, LLC v. Purple Haze of Seminole, LLC*, No. 8:22-cv-02113-VMC-AEP, 2023 WL 3629705, at *5 (M.D. Fla. May 8, 2023) (citing *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d

1340, 1359 (S.D. Fla. 2017)), *report and recommendation adopted*, 2023 WL 3620654 (M.D. Fla. May 24, 2023). Courts need not apply the seven-factor test where a counterfeit mark is at issue. *See Casa Dimitri Corp.*, 270 F.Supp.3d at 1359; *Dive N'Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 382 (M.D. Fla. 1993).

GS Holistic alleges Ghounim, as owner, "controls and directs" Fumoo's activities and "authorized, directed, and/or participated in Fumoo's offer for sale, in commerce" of counterfeit gravity infuser waterpipes bearing the Stündenglass Marks (Doc. 1 at ¶¶ 6, 35). Specifically, at Ghounim's direction, Fumoo "offered for sale counterfeit Stündenglass products with the Stündenglass trademark [ ] without the consent of GS. In fact, they have offered counterfeit gravity infuser waterpipes bearing imitations of the Stündenglass Trademarks that were not made or authorized by GS." (*Id*. at ¶ 27). As part of GS Holisitic's larger-scale investigation into the sale of counterfeit products bearing the Stündenglass Marks, a GS Holistic investigator visited Fumoo's retail location, observed six gravity infuser waterpipes for sale that appeared to display the Stündenglass Marks, and purchased one for $376.25 (*Id*. at ¶¶ 32-33) When the investigator examined the waterpipe, however, he confirmed that it was counterfeit and that the infringing marks it bore were identical to, or substantially indistinguishable from, the Stündenglass Marks (*Id*. at ¶¶ 33-34; Doc. 1-5).

GS Holistic attaches to its Complaint pictures of the counterfeit good bearing the infringing marks (Doc. 1-5), and it alleges the infringing marks would confuse customers and allow Ghounim to trade on GS Holistic's efforts to build its brand and reputation. Christopher Folkerts, GS Holistic's owner and CEO, attested that the product the investigator purchased was "of far inferior quality to the authentic Stündenglass." (Doc. 31-2 at ¶ 10). He avers that "[t]he Defendant store owner, who is in the business of selling vaporizers and

9

accessories, knew the price [of] Stündenglass products, such as the one that was sold, and that the product the Defendants sold are of far inferior quality to the authentic Stündenglass." (*Id.*). Taking GS Holistic's allegations as true, Fumoo used identical or substantially similar marks in a way that was likely to create consumer confusion, at Ghounim's direction and without Plaintiff's authorization. Plaintiff has established Ghounim's liability for trademark infringement under 15 U.S.C. § 1114 (Count I) and for false designation of origin under 15 U.S.C. § 1125(a) (Count II).

### C. Damages

GS Holistic seeks an award of statutory damages for Ghounim's willful conduct and an award of GS Holistic's costs. On this record, a statutory damages award of $150,000 for willful trademark counterfeiting ($50,000 per mark) and a costs award of $672.00 is warranted.

Once a basis for liability has been established, the court must determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004). While Rule 55(b)(2) allows the court to conduct a hearing on damages, a hearing is not necessary when "all essential evidence [is] already of record." *SEC v. Smyth*, 420 F.3d at 1233. If the facts are undisputed, the court may award statutory damages without a hearing based on "affidavits and other documentary evidence." *GS Holistic, LLC v. Purple Haze of Seminole, LLC*, 2023 WL 3629705, at *6 (quoting *Perry Ellis*, 2007 WL 3047143, at *1).

As contemplated by 15 U.S.C. § 1117(c), GS Holistic seeks statutory damages and costs instead of actual damages. In cases involving a counterfeit mark, a plaintiff "may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits..., an award of statutory damages." 15 U.S.C. § 1117(c). Statutory

10

damages range between $1,000.00 and $200,000.00 per infringing mark per good sold or offered for sale. 15 U.S.C. § 1117(c)(1). If there is a finding of willfulness, however, the Court can award up to $2,000,000 per counterfeit mark per good sold or offered for sale. 15 U.S.C. § 1117(c)(2). A counterfeit mark means a "spurious designation[s] that is identical with, or substantially indistinguishable from" a trademark. 15 USCS § 1116(d). As Plaintiff has established Ghounim's liability for trademark counterfeiting and infringement, statutory damages under § 1117(c) are appropriate.

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *GS Holistic, LLC v. Purple Haze of Seminole, LLC,* 2023 WL 3629705 (collecting cases). "[A]ll monetary awards under Section 1117 are 'subject to the principles of equity,' [and] . . . no hard and fast rules dictate the form or quantum of relief." *Burger King Corp. v. Mason*, 855 F.2d 779, 783 (11th Cir. 1988). The twin goals of statutory damages are to compensate losses and deter infringers, *see PetMed Express*, 336 F. Supp. 2d at 1220-21, and to effectuate these goals, courts often look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c). Under § 504(c), courts consider seven factors: "1) the expenses saved and the profits reaped; 2) plaintiff's lost revenues; 3) the value of the trademark; 4) the deterrent effect on others; 5) whether defendant's conduct was willful or innocent; 6) whether defendant has cooperated in providing particular information to assess the value of the infringing material; and 7) the potential for discouraging defendant." *CreeLED, Inc. v. Individuals, Partnerships and Unincorporated Associations identified on Schedule "A"*, No. 8:22-cv-2379-MSS-TGW, 2024 WL 1466168, at * 4 (M.D. Fla. Apr. 4, 2024) (citing C*oach, Inc. v. Wagon Wheel Flea Mkt., Inc.*, No. 11-cv-00826, 2012 WL 13105459, at *2 (M.D. Fla. Apr. 30, 2012)). And in cases alleging willful infringement, the defendant's willfulness is established by its default.

*See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1292 (S.D. Fla. 2016); *Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F.Supp.2d 1310, 1313 (S.D. Fla. 2003); *Perry Ellis*, 2007 WL 3047143, at *7 ("PEI's allegation that URI intentionally, knowingly, and willfully infringed upon PEI's trademarks has been established by the default.").

GS Holistic requests $50,000 in statutory damages per mark, or $150,000.00, plus $672.00 in costs. Its costs consist of the filing fee ($402.00) and the process server's fees ($270.00) (Docs. 31-1 at ¶ 8, 31-1 at 4). Due to Ghounim's failure to appear in this case, GS Holistic is "unable to establish the exact volume of counterfeit GS Products sold by Defendants beyond that of the sale to the Investigator." (Doc. 31-2 at ¶ 21). Although GS Holsitic has not submitted evidence of the expenses saved and profits reaped by Ghounim, the court infers that Ghounim would not have infringed Plaintiff's marks if it were not somehow either profitable or expense-saving for him.

Folkerts attests that GS Holistic has visited 4,954 smoke shops nationwide through its investigators and purchased 977 counterfeit Stündenglass products (Doc. 31-3 at ¶ 10). Based on this ratio, Folkerts reasons that one-fifth of smoke shops across the country sell counterfeit products (*Id.*). He attests that GS Holistic's total sales of Sundenglass products in the United States approximated $1.7 million in 2020, $9.6 million in 2021, and $10.8 million in 2022, and that economists project the industry will continue to grow through 2034 (*Id.* at ¶¶ 12-13). In fact, Folkerts estimates that GS Holistic would have sold more than $45 million in Stündenglass brand products in 2022 if not for rampant counterfeiting (*Id.* at ¶ 14). The basis for this estimate is Folkert's "industry knowledge." (*Id.*). In any event, Folkert attests that damages of $50,000.00 per mark for a total of $150,000.00 would deter continued willful infringement of the Stündenglass Marks.

Considering the compensation and deterrence goals of statutory damages and the persuasive factors borrowed from the Copyright Act, the Court recommends awarding GS Holistic its requested damages and costs. In this situation, an actual damages calculation "is extremely difficult if not impossible." *Nike, Inc. v. Austin*, No. 6:09-cv-796-ORL-28KRS, 2009 WL 3535500, at *5 (M.D. Fla. Oct. 28, 2009). GS Holistic has marshaled some evidence to demonstrate the extent of the impact of counterfeit sales on its industry in general. Folkerts attests that GS Holistic has struggled to enter new markets because of widespread counterfeiting (Doc. 31-3 at ¶ 8). He explains that selling counterfeit products impacts GS Holistic's reputation because individuals buy counterfeit products and are then disappointed by their quality (Doc. 31-2 at ¶ 22).

The pervasiveness of counterfeits in the market necessitates damages to deter wrongful conduct. While not limited to Defendants' sales, the evidence demonstrates that GS Holistic has felt significant impacts from counterfeit sales. And in this case, the infringing marks were identical to the Stündenglass Marks. Combined with Ghounim's default, this shows willful infringement. Although GS Holistic does not request damages above $200,000.00 (the threshold for a finding of willfulness), the willfulness of Ghounim's infringement is relevant to statutory damages. Additionally, Stündenglass products sell for at least $599.95 – the trademark's value is high. On this record, GS Holistic is entitled to statutory damages of $50,000 per mark plus its costs of the filing fee ($402.00) and process server fees ($270.00). *See* 15 U.S.C. § 1117(a). This totals $150,672.00.

### D. Injunctive Relief

GS Holistic seeks injunctive relief against Ghounim under 15 U.S.C. § 1116(a).[2] "Federal courts may grant permanent injunctions where infringement is found to have occurred in order to prevent further infringing use of a mark[.]" *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008). And "such injunctions should be designed to keep the former infringers 'a safe distance away' from the protected mark." *Id*. A plaintiff seeking a permanent injunction must demonstrate: "it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

GS Holistic presents minimal argument in support of its permanent injunction (Doc. 31 at 19-21), although the allegations in the Complaint establish the necessary elements (Doc. 1). The Complaint demonstrates that the Stündenglass Marks are recognized both nationally and internationally, and Ghounim's unauthorized use of these Marks has caused and is likely to continue confusing consumers. GS Holistic has shown that it has suffered and will continue to suffer irreparable harm that a damages award cannot remedy.

By failing to appear and defend himself against Plaintiff's allegations, Ghounim has not demonstrated that he will suffer any hardship if the Court enjoins him from the

---

[2] Plaintiff's counsel contacted the Department of Defense Manpower Center and requested a report regarding Ghounim's military status in compliance with the Servicemembers Civil Relief Act, 50 U.S.C. App'x § 521 (Doc. 31-4 at 1). The report confirmed that Ghounim has not been an active member of the United States military within the last 12 months (*Id*. at 3-4).

unauthorized use of the Stündenglass Marks. Ghounim likely will face some costs in removing the Stündenglass-branded products from his store and discontinuing their sales. But this hardship is minor compared to the harm GS Holistic and the Stündenglass brand will endure (the loss of sales and goodwill) if Ghounim is not permanently enjoined from using the Stündenglass Marks without authorization. A permanent injunction is the best way to protect the public from future confusion. *See Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("the public interest is served by preventing consumer confusion in the marketplace"). GS Holistic is entitled to permanent injunctive relief against Ghounim.

## IV.   CONCLUSION

The Court **RECOMMENDS:**

1. Plaintiff GS Holistic LLC's Motion for Entry of Default Final Judgment Against Defendant Ghounim (Doc. 31) be **GRANTED**.

2. The Court finds that Plaintiff GS Holistic, LLC is entitled to a default judgment against Defendant Mehdi Ghounim for $150,000.00 in statutory damages and $672.00 in costs.

3. The Court finds that Plaintiff is entitled to a permanent injunction enjoining Defendant Mehdi Ghounim and his agents and employees, and all persons acting in concert or in participation with him, from directly or indirectly infringing the Stündenglass Marks, including these restrictions:

    a. Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing, advertising, or promotion of counterfeit Stündenglass products,

meaning products bearing the Stündenglass trademarks (No. 6,633,884, No. 6,174,292, and No. 6,174,291), counterfeits, copies, or colorful imitations thereof.

**IT IS SO REPORTED** in Tampa, Florida, on October 23, 2025.

_____
SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.